## PALMCO CORPORATION

v.

## JSC TECHSNABEXPORT

## No. SA CV 06–214DOC.

United States District Court,
C.D. California.

July 25, 2006.

---

Marcus S. Quintanilla, Michael G. Yoder, O'Melveny & Myers, Newport Beach, CA, for Palmco Corporation.

Carolyn B. Lamm, Paul F. Stone, White & Case, Washington, DC, Dan J. Woods, Sayema Javed Hameed White & Case, Los Angeles, CA, for JSC Techsnabexport.

### *CIVIL MINUTES—GENERAL*

CARTER, District Judge.

PROCEEDING (IN CHAMBERS): ORDER GRANTING MOTION TO DISMISS ON FORUM NON

Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint ("Motion"). The Court finds the matter is appropriate for decision without oral argument. Fed.R.Civ.P. 78; Local Rule 7–15. Accordingly, the hearing set for July 17, 2006 was removed from the Court's calen-

dar. After reviewing the moving, opposing, and replying papers, and for the reasons set forth below, the Court GRANTS the Motion.

## I. BACKGROUND

This lawsuit arises out of a series of contracts between Plaintiff Palmco Corporation ("Palmco"), a California corporation, and Defendant JSC Techsnabexport ("Tenex"). Tenex, which was then a Soviet Union-owned and is now a Russian Federation-owned entity, and Palmco's agreements concerned the purchase and sale of Soviet (now Russian) origin uranium to entities in South Korea. Specifically, in contracts stretching back to December 28, 1988 and extending through 2009, Tenex agreed to sell then-Soviet-origin uranium[1] to Palmco, who then sold it to the Korea Electric Power Company ("KEPCO"), and, starting in April 2001, to KEPCO's subsidiary, Korea Hydro and Nuclear Power Company, Ltd. ("KHNP"), for use in commercial nuclear power plants. *See* Compl. ¶¶ 8–9; *see also* Decl. of Paul F. Stone ¶¶ 4–5, Exs. C, D. Since 1988, the parties have entered into various other related contracts, including similar agreements to supply additional uranium or uranium concentrates and uranium conversion services to KEPCO and/or KHNP. *See* Compl. ¶¶ 10–12; *see also* Stone Decl. ¶¶ 6–8, Exs. E, F, G. Palmco served as the intermediary of or representative for Tenex with respect to the South Korean entities in all of these contracts. *See* Compl. ¶¶ 8–12.

The contracts between Palmco and Tenex contained both a choice of law provision, identifying Sweden as the controlling law governing the contracts in all respects, as well as an agreement to arbitrate all claims arising out of the contracts in Swe-

den. *See* Stone Decl. Ex. C at 9.1, 10.1, 10.3; Ex. E at 13.1, 13.2, 13.3; Ex. F at 15.1, 15.2; Ex. G at 20.1, 20.2, 20.3.

The relationship between the parties has deteriorated in recent years, and they are currently engaged in arbitration in Sweden. The arbitration was initially instigated by Tenex, but Palmco responded by asserting a multiple counterclaims. In the pending arbitration proceedings, Palmco claims that Tenex has engaged in a number of contractual breaches.

Palmco has brought the instant lawsuit seeking interim relief pending the final resolution of the arbitration. As such, the same allegations underlie both the arbitration proceedings currently underway in Sweden and the present request for injunctive relief before this Court. Palmco alleges that, starting in approximately mid–2002, Tenex had come under the control of new management who formulated a goal of eliminating all intermediaries through which Tenex had traditionally exported Russian uranium. Compl. ¶¶ 13–14. Palmco claims that Tenex has undertaken both clandestine efforts to undermine Palmco's relationship with KEPCO and KHNP as well as overt steps to "marginalize, intimidate, and ultimately supplant Palmco." Compl. ¶ 14. Palmco alleges that Tenex's ultimate goal is to "eliminat[e] Palmco as a direct supplier of [uranium] to the power utilities of South Korea so that Tenex can sell [uranium] directly to Palmco's customers." Compl. ¶ 15. Palmco details its allegations in the Complaint, and asserts that Tenex's actions constitute multiple contractual breaches. Compl. ¶¶ 16–29.

On June 1, 2006, Tenex brought the instant Motion, seeking to dismiss the Complaint on a number of grounds.[2] Be-

---

1. The contracts refer to uranium at different stages in the civilian-grade uranium enrichment process, but the details are not relevant here.

2. Parts of the Motion and its supporting exhibits were filed under seal with the permission of the Court.

cause the Court finds that dismissal is proper under the doctrine of forum non conveniens, it does not reach the issue of whether any of the other grounds asserted also warrant dismissal.

## II. LEGAL STANDARD

■ "A district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir.2001). However, the doctrine of forum non conveniens is not one which is to be applied lightly. As a general rule, a plaintiff's choice of forum is to be given great deference. *See Piper Aircraft v. Reyno*, 454 U.S. 235, 244, 102 S.Ct. 252, 260, 70 L.Ed.2d 419 (1981). Forum non conveniens should be applied only in limited cases, when there is an alternative jurisdiction available and both public and private factors weigh strongly in favor of adjudicating the matter in the foreign forum. *See Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir.1991).

■ The defendant moving to dismiss for forum non conveniens has the burden of proving both that an adequate alternative forum exists, and that the balance of private and public interest factors weigh in favor of dismissal. *Creative Tech. v. Aztech Sys. Pte*, 61 F.3d 696, 699 (9th Cir. 1995) (citing *Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1449 (9th Cir.1990)). The plaintiff's choice of forum should be disturbed rarely, and only when "defendants have made a clear showing of facts which ... establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir.2002).

■ The first requirement for a forum non conveniens dismissal is whether there is an adequate alternative jurisdiction available to the plaintiff. This requirement is usually satisfied when the defendant is "amenable to process" in the alternate jurisdiction. *Lockman*, 930 F.2d at 768. Sometimes, albeit rarely, despite the defendant's amenability to process, the alternative forum will be inadequate because the remedy provided would be so unsatisfactory that it is essentially no remedy at all. *Id.*

■ Next, a plaintiff's choice of forum will generally not be disturbed unless both private and public factors strongly favor trial in a foreign forum. *Lueck*, 236 F.3d at 1145. Courts consider the following private interest factors: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Contact Lumber*, 918 F.2d at 1449).

■ Courts consider the following public interest factors: "(1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum." *Lueck*, 236 F.3d at 1147 (citing *Piper Aircraft*, 454 U.S. at 259-61, 102 S.Ct. 252; *Gulf Oil*, 330 U.S. at 508-09, 67 S.Ct. 839).

## III. DISCUSSION

Tenex argues that this action should be dismissed on forum non conveniens grounds because California is an inconvenient and inadequate forum, and because Sweden presents a more appropriate fo-

rum. The Court agrees for the reasons outlined below.

## A. Adequate Alternate Forum

 To warrant dismissal on the grounds of forum non conveniens, Telex must show the existence of an adequate alternative forum. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1177 (9th Cir.2006). An alternative forum is available where the defendant is amenable to service of process and where the foreign forum provides "some remedy" for the wrong at issue. *Lueck*, 236 F.3d at 1143. "This test is easy to pass; typically, a forum will be inadequate only where the remedy provided is so clearly inadequate or unsatisfactory, that it is no remedy at all." *Tuazon*, 433 F.3d at 1177 (internal quotation marks omitted); *see also Lueck*, 236 F.3d at 1143 (noting that it is only in "rare circumstances ... that this requirement is not met" (internal quotation marks omitted)).

 The Court finds that Sweden is an adequate alternative forum. It is clear from the record that Tenex is subject to service of process in Sweden, as evinced by the ongoing arbitration between the parties there. Moreover, the Swedish tribunals offer a sufficient remedy to Palmco. Primarily, the Court must recognize the effect of the parties' arbitration clause. Palmco does not dispute the fact that the clause is a valid and binding agreement mandating that all disputes arising out of the parties' contracts be arbitrated in front of a Swedish tribunal. Pl.'s Opp'n at 6; *cf. Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). As a legal matter, the clause operates as a "specialized kind of forum-selection clause." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). Courts outside this circuit have held that mandatory forum selection clauses designating a forum different than

that chosen by the plaintiff eliminates the traditional presumption favoring the plaintiff's choice of forum in forum non conveniens cases. *See, e.g., Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 510 (2d Cir.1998); *cf. AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 526 (7th Cir.2001). Although no court in this circuit appears to have adopted that rule explicitly, this Court agrees with *Matson Navigation Co., Inc. v. Stal-Laval Turbin AB*, 609 F.Supp. 579, 582 (N.D.Cal.1985), that where the parties expressly contemplated resolution of their disputes in a foreign venue, that decision should be given "great weight." *Id.* at 582. Palmco is a sophisticated party that has explicitly agreed for almost twenty years to resolve any issues that might arise out of its contracts with Tenex in a Swedish arbitral forum. Its current claim that such a forum is inadequate strikes the Court as conveniently and recently adopted.

The Court is convinced that Sweden offers sufficient relief to satisfy the low threshold showing required to establish the existence of an adequate alternative forum. Palmco argues that the Swedish tribunal cannot offer it the interim relief requested herein because, while they have the authority to issue provisional remedial decrees, the arbitration panels have no ability to enforce them. In support of this, Palmco cites the short and somewhat conclusory declaration of Mikeal Broome, a practicing lawyer in Sweden, who relies on a treatise by Lars Heuman entitled *Arbitration Law of Sweden: Practice and Procedure. See* Decl. of Mikeal Broome ¶¶ 1–2. While the arbitration panels apparently have no independent ability to issue sanctions for parties that fail to abide by the temporary relief order, that does not leave Palmco without any remedy for the harm allegedly suffered, which revolves around allegations of breach of contract. *See*

*Lueck,* 236 F.3d at 1143 ("The foreign forum must provide the plaintiff with *some remedy* for his wrong in order for the alternative forum to be adequate." (emphasis added)). Tenex has provided evidence to this effect from Claes Zettermarck, an attorney who practices in Sweden and who has represented clients in international arbitrations and served as an arbitrator in such disputes in Sweden himself. Decl. of Claes Zettermarck ¶ 1. In doing so, Zettermarck has firsthand working knowledge of the rules that govern the Swedish arbitral tribunals that are currently hearing the parties' claims. *Id.*

 This evidence Tenex provides shows that, according to the same treatise relied on by Palmco, the arbitration panel is authorized to remedy the situation on the back end, i.e., by awarding additional damages for failure to comply with the interim order. *See* Zettermarck Decl. ¶ 5.[3] While this is not the same type of relief requested by Palmco in this case, the law is clear that a forum does not become inadequate simply because it provides a different range of remedies for the same substantive misconduct, even when the potential remedies are less favorable to the plaintiff. *See Lueck,* 236 F.3d at 1143–45; *see also Ceramic Corp. of Am. v. Inka Mar. Corp.,* 1 F.3d 947, 949 (9th Cir.1993). Moreover, the same treatise cited by Palmco indicates that while the Swedish arbitration panel may not have any enforcement mechanism to ensure compliance with an interim order, other courts apparently do. Zettermarck Decl. ¶¶ 3–4. Specifically, Professor Heuman states that the award is "presumably enforceable under the New York Convention." *Id.* ¶ 4 (quoting Heuman treatise). Both Russia and the United States are signatories to the New York Convention, and at least one circuit court has explicitly recognized that interim arbitral "ruling[s] on . . . discrete,

time-sensitive issue[s] may be final and ripe for confirmation" under the New York Convention. *Publicis Commc'n v. True N. Commc'ns Inc.,* 206 F.3d 725, 729 (7th Cir.2000); *see also Pac. Reins. Mgmt. Corp. v. Ohio Reins. Corp.,* 935 F.2d 1019, 1022–23 (9th Cir.1991) (holding that an arbitration panel's "interim final order" providing temporary equitable relief which was necessary to make the potential final award meaningful was subject to confirmation). In short, the Court finds that the evidence demonstrates that Sweden provides an adequate alternative forum under the law. Accordingly, the Court must next assess whether the balance of the private and public interest factors strongly favors dismissal.

**B. Private Interest Factors**

 The Court finds that the private interest factors strongly favor dismissing this case. The parties are sophisticated, and they have had a standing agreement for almost twenty years to arbitrate any disputes in Sweden. This is significant to the private interest factor evaluation, as it demonstrates that each party understood that choosing a neutral country where neither party had a business presence was to the advantage of all. *Cf. Scherk,* 417 U.S. at 518, 94 S.Ct. 2449 ("The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting." (internal quotation marks omitted)). While litigating any part of that dispute in California is necessarily advantageous to Palmco, who is located here, and burdensome to Tenex, who is located in Russia and has no other substantial commercial ties here, that alone does not warrant a dismissal on convenience grounds.

---

**3.** The fifth paragraph of the declaration, rele- vant here, is inaccurately labeled "4."

The fact that tilts the private interest factors sharply toward Tenex is that the parties are already engaged in arbitration over the exact same issues in Sweden. In accordance with the arbitration clause Tenex and Palmco chose to include in their contracts, each has asserted their claims in the Swedish arbitral tribunal, and therefore both parties must absorb the costs associated with attending the arbitration, presenting their evidence and witnesses, and all of the other inconveniences of resolving the dispute. Everything necessary to resolve this dispute must be presented in Sweden. A second lawsuit here, covering at least some of the same territory and requiring the parties to attend and produce evidence, even if not necessarily requiring direct witness testimony, is highly inefficient and duplicative of the ongoing arbitration. Even though only interim relief is sought here, the parties would need to invest resources in the development of the factual record while concurrently undergoing the same effort in Sweden, and both the arbitral tribunal and this Court would have to make factual and legal findings on matters governed by Swedish law.[4] As the Ninth Circuit has noted, "There are significant advantages in having all the parties ... assert their claims in one forum, not only to avoid inconsistent factual findings, but also to spare the litigants the additional costs of duplicate lawsuits." *Contact Lumber*, 918 F.2d at 1452. Dismissal serves the goals of economy and efficiency, and furthers the convenience of both parties.

### C. Public Interest Factors

■ While the Court recognizes that California has an interest in this litigation since Palmco is a California corporation, the Court finds that the public interest factors overall weigh in favor of dismissing this case. Primarily, Palmco concedes that all of the agreements at issue involve choice of law provisions that require the application of Swedish law. Pl.'s Opp'n at 6. There is no question that Sweden would be better equipped to apply Swedish law than this Court. This Court's relative lack of familiarity with Swedish law militates toward dismissal. *See Piper*, 454 U.S. at 260 & n. 29, 102 S.Ct. 252 (recognizing that "the need to apply foreign law point[s] towards dismissal" and noting cases ruling accordingly); *see also Gambra v. Int'l Lease Fin. Corp.*, 377 F.Supp.2d 810, 825 (C.D.Cal.2005); *Matson Navigation*, 609 F.Supp. at 582. This is true even though Palmco seeks only interim relief, as any preliminary injunction hearing requires an evaluation of the likelihood of success on the merits, which would necessarily require an application of the governing law. Additionally, Palmco's suggestion that Tenex has not established that Swedish law differs from American law on contract interpretation and enforcement is unpersuasive. The Court finds nothing in the relevant law imposing such a burden on a party seeking dismissal on forum non conveniens grounds, as the doctrine is "designed in part to help courts avoid conducting complex exercises in comparative law." *See Piper*, 454 U.S. at 251, 102 S.Ct. 252. More to the point, the parties' differing interpretations of Swedish law even in these briefs illustrates why Sweden is a better forum for the resolution of this dispute. Moreover, the Court believes that arbitration in Sweden will produce a speedier conclusion. *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir.1984). Multiple arbitration panels have already been convened to consider the parties' claims and counterclaims, and they have the advantage of employing less

---

4. A discussion of the impact of the Swedish choice of law provision in the parties' con- tracts is found below in the subsection discussing the public interest factors.

**1202**

restrictive procedural rules and being devoted to the consideration of the parties' dispute. *Cf. Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Accordingly, the Court finds that the balance of the relevant factors strongly favors dismissal.

## IV. DISPOSITION

For the reasons articulated above, the Court hereby GRANTS Tenex's Motion. This action is hereby dismissed on forum non conveniens grounds. The Clerk shall serve this minute order on all parties to the action.